1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9

10   DERRICK M. SIMON,                      CASE NO. C12-0979JLR-MAT

11                    Plaintiff,            ORDER GRANTING IN PART
                                            AND DENYING IN PART
12          v.                              DEFENDANTS' MOTION TO
                                            DISMISS
13   ROBIN MURPHY, et al.,

14                    Defendants.

15                      **I.   INTRODUCTION**

16          Before the court is Defendants' motion to dismiss Plaintiff Derrick M. Simon's 42

17   U.S.C. § 1983 complaint alleging violations of his due process and equal protection rights

18   under the Fourteenth Amendment.  (Mot. to Dismiss (Dkt # 20).)  This is a civil rights

19   case arising from Mr. Simon's expulsion from a sex offender treatment program.  Mr.

20   Simon, an inmate at the Washington Department of Corrections ("DOC"), alleges that

21   Defendants, DOC employees, violated his constitutional rights by removing him from the

22   prison's sex offender treatment program.  (Compl. (Dkt # 9).)  Defendants move to

1  dismiss Mr. Simon's case pursuant to Federal Rule of Civil Procedure 12(c), arguing that

2  Mr. Simon has failed to state a cognizable claim.  (Mot. to Dismiss at 1.)

3        Also before the court are the Report and Recommendation ("R&R") of Magistrate

4  Judge Mary Alice Theiler recommending that Defendants' motion be granted in part and

5  denied in part (R&R (Dkt. # 33)), and Mr. Simon's objections thereto (Objections (Dkt.

6  # 34)).  Magistrate Judge Theiler recommended that the court dismiss Mr. Simon's due

7  process claims (R&R at 4), but did not consider whether Mr. Simon had a due process

8  liberty interest in sex offender treatment arising from a particular Washington statute,

9  RCW 72.09.335 (2004).  (*See* 3/18/13 Order (Dkt. # 35); RCW 72.09.335 (2004)

10  (requiring the DOC to provide inmates with sex offender treatment under certain

11  circumstances).)  Magistrate Judge Theiler also recommended that the court deny

12  Defendants' motion to dismiss Mr. Simon's equal protection claims.  (R&R at 11.)

13        The court has considered the parties' submissions filed in support of and

14  opposition to the motion, the R&R, and the applicable law.  For the reasons stated below,

15  the court GRANTS in part and DENIES in part the motion.  Even after considering

16  whether RCW 72.09.335 creates a liberty interest in sex offender treatment, the court

17  agrees with Magistrate Judge Theiler that Mr. Simon has no liberty interest at stake in

18  this case and thus GRANTS Defendants' motion to dismiss his due process claims.  The

19  court also agrees that dismissing Mr. Simon's equal protection claim is not now

20  appropriate, and thus DENIES Defendant's motion to dismiss that claim.

21

22

ORDER- 2

## II.    BACKGROUND

This is a civil rights action for damages under 42 U.S.C. § 1983 brought by Plaintiff Mr. Simon on June 5, 2012.  (Compl.)  Mr. Simon was convicted of Indecent Liberties and First Degree Promoting Prostitution in King County Superior Court for crimes committed in 2003.  (Mot. to Dismiss Ex. 1 (Dkt. # 20-1) at 2.)  Indecent Liberties is a felony sex offense in Washington.  *See* RCW 9.94A.030(46)(a)(1); RCW 9A.44.100(2)(a).  In October 2004, a King County Superior Court judge sentenced Mr. Simon to seventy-five months to ten years for the Indecent Liberties count pursuant to RCW 9.94A.712 (effective until July 1, 2005), recodified to RCW 9.94A.507.  (Mot. to Dismiss Ex. 1 at 6.)  Due to his sex offense conviction, Mr. Simon is not eligible for release prior to the expiration of his sentence but is eligible for transfer to community custody in lieu of earned release time.  *See id.*; RCW 9.94A.712(5) (effective until July 1, 2005); RCW 9.94A.728(2)(b) (effective until July 1, 2005).  Mr. Simon was also sentenced to community custody "for any period of time the defendant is released from total confinement before the expiration of the maximum sentence."  (Mot. to Dismiss Ex. 1 at 6.)

While in prison, Mr. Simon took part in the DOC's Sex Offender Treatment Program ("SOTP") until he was expelled from that program in January, 2010.  (Compl. at 4.)  Mr. Simon alleges that he was expelled from SOTP without justification and without due process of law, and that he has a constitutionally protected liberty interest in participating in the program because participation is a factor in parole decisions.  (Compl. at 1-2.)  He alleges this expulsion violated his procedural and substantive due process

1   rights under the Fourteenth Amendment.  (Compl. at 5.)  Mr. Simon also claims that his

2   expulsion violated his equal protection rights under the Fourteenth Amendment because

3   he is black and was allegedly treated differently than similarly situated white inmates.

4   (*Id.*; Simon Decl. (Dkt. # 32) at 23-26.)

5          Defendants, who work for the DOC, move to dismiss Mr. Simon's due process

6   claims, arguing that he has no constitutionally protected liberty interest in sex offender

7   treatment or early release.  (Mot. to Dismiss at 4.)  Magistrate Judge Theiler agreed and

8   recommended that the court dismiss Mr. Simon's due process claims.  (R&R at 4.)

9   Defendants also move to dismiss Mr. Simon's equal protection claim, arguing that Mr.

10  Simon has failed to allege facts sufficient to support an equal protection violation.  (Mot.

11  to Dismiss at 8.)  Magistrate Judge Theiler recommended that the court deny Defendants'

12  motion to dismiss Mr. Simon's equal protection claim.  (R&R at 11.)

13         After reviewing Mr. Simon's complaint, Defendants' motion to dismiss, and the

14  R&R, the court issued an order requesting additional briefing.  (3/18/13 Order (Dkt.

15  # 35).)  In this order, the court noted that Washington law may create a liberty interest in

16  sex offender treatment for inmates like Mr. Simon.  (*Id.* at 4.)  Specifically, a

17  Washington statute requires the DOC to provide certain inmates with sex offender

18  treatment:  "The [DOC] shall provide offenders sentenced under RCW 9.94A.712 with

19  the opportunity for sex offender treatment during incarceration."  RCW 72.09.335

20  (2004).  This statute applies to Mr. Simon because he was sentenced under RCW

21  9.94A.712 (*see* Mot. to Dismiss Ex. 1 at 6), and is currently incarcerated.  The court

22  requested additional briefing to address whether Mr. Simon has a due process liberty

1  interest in the opportunity to receive sex offender treatment arising from this statute.

2  (3/18/13 Order at 5.)  Having considered the additional briefing, the court now evaluates

3  Defendants' motion to dismiss Mr. Simon's complaint.  (Dkt. # 20.)

### III.    ANALYSIS

**A.    Legal Standard**

6          Defendants move to dismiss Mr. Simon's 42 U.S.C § 1983 claims pursuant to

7  Federal Rule of Civil Procedure 12(c).  (*See generally* Mot. to Dismiss).  Under Rule

8  12(c), "[a]fter pleadings are closed—but early enough not to delay trial—a party may

9  move for judgment on the pleadings."  Fed. R. Civ. P. 12 (c).  The court evaluates a Rule

10  12(c) motion to dismiss under the same standard as a Rule 12(b)(6) motion.  *Dworkin v.*

11  *Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Dismissal under Rule

12  12(b)(6) may be based on a lack of a cognizable legal theory or the absence of sufficient

13  facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901

14  F.2d 696, 699 (9th Cir. 1990).

15          When evaluating a motion to dismiss, the court construes the complaint in the light

16  most favorable to the non-moving party.  *Livid Holdings Ltd. v. Salomon Smith Barney,*

17  *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  However, the complaint "must contain sufficient

18  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

19  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

20  544, 570 (2007)).  The court accepts all well-pleaded factual allegations as true and draws

21  all reasonable inferences in favor of the plaintiff.  *Baker v. Riverside Cnty. Office of*

22

1   *Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).  The court also liberally construes *pro se*

2   pleadings.  *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

3         Mr. Simon, proceeding *pro se* and *in forma pauperis*, claims violations of his

4   constitutional rights pursuant to 42 U.S.C. § 1983.  (*See generally* Compl.)  In order to

5   sustain his claims, Mr. Simon must establish that he suffered a violation of rights

6   protected by the Constitution and that this violation was proximately caused by a person

7   acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  As an inmate at

8   the DOC, Mr. Simon "is not wholly stripped of constitutional protections," *Wolff v.*

9   *McDonnell*, 418 U.S. 539, 555 (1974), but his rights are "subject to restrictions imposed

10  by the nature of the regime to which [he has] been lawfully committed."  *Id.* at 556.

11  **B.    Due Process**

12        Mr. Simon alleges that the DOC, acting under color of state law, violated both his

13  procedural and substantive due process rights.  (*See generally* Compl.)  Under the Due

14  Process Clause of the Fourteenth Amendment, the government cannot deprive a person of

15  "life, liberty, or property" without due process of law.  U.S. Const. amend, XIV.  A due

16  process claim—whether procedural or substantive—exists only where a constitutionally

17  protected liberty or property interest is at stake.  *Ingraham v. Wright*, 430 U.S. 651, 672

18  (1977).  Therefore, this court must first determine whether Mr. Simon has a liberty

19  interest protected by the Due Process Clause implicated by his expulsion from SOTP.

20        A liberty interest may arise from either the Constitution itself or from state law.

21  *Meachum v. Fano*, 427 U.S. 215, 225-26 (1976).  Magistrate Judge Theiler found that

22  Mr. Simon had no liberty interest in either sex offender treatment or transfer to

ORDER- 6

1  community custody, whether arising out of the Constitution or state law.  (R&R at 5, 7.)

2  The court agrees that Mr. Simon has no liberty interest in transfer to community custody.

3  *Carver v. Lehman*, 558 F.3d 869, 875 (9th Cir. 2009) (holding that Washington law does

4  not create a liberty interest in transfer to community custody for sex offenders); *see also*

5  *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 7 (1979) (holding that convicted

6  prisoners have no due process liberty interest in early release arising from the

7  Constitution).  As explained below, the court also agrees that Mr. Simon has no liberty

8  interest in sex offender treatment created by the U.S. Constitution or Washington law.

9      1.  Liberty Interest Created by the Constitution

10     A liberty interest may arise from the Constitution itself "by reason of guarantees

11 implicit in the word 'liberty.'" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  The Due

12 Process Clause does not protect every change in conditions of confinement adversely

13 impacting a prisoner, even if these changes cause the prisoner to suffer a "grievous loss."

14 *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (rejecting "the notion that *any* grievous loss

15 visited upon a person by the State" triggers due process protections (emphasis in

16 original)).  Only the most severe changes in conditions of confinement trigger liberty

17 interests protected directly by the Constitution.  *See, e.g.*, *Vitek v. Jones*, 445 U.S. 480,

18 491-94 (1980) (holding that "involuntary commitment to a mental hospital" triggered due

19 process protections); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (holding that

20 "unwanted administration of antipsychotic drugs" triggered due process protections).

21     Prisoners have no liberty interest in rehabilitative programs arising directly from

22 the Constitution.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (finding no due

1    process right in "eligibility for rehabilitative programs" in the federal prison system);

2    *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (finding that there "is no

3    constitutional right to rehabilitation" and thus no right to access rehabilitative services).

4    Moreover, the Ninth Circuit Court of Appeals has rejected a right to sex offender

5    treatment arising directly from the Constitution.  *See Balla v. Idaho State Bd. of Corr.*,

6    869 F.2d 461, 470 (9th Cir. 1989) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1255 n.8

7    (9th Cir. 1982) (reiterating *Hoptowit*'s conclusion that prisoners "have no constitutional

8    right to rehabilitation" and concluding that inmates specifically have no right to sex

9    offender treatment when their incarceration serves punitive purposes).  For these reasons,

10   the court agrees with Magistrate Theiler that the Constitution does not create a liberty

11   interest in sex offender treatment and ADOPTS that portion of Magistrate Judge Theiler's

12   Report and Recommendation.  (R&R at 5.)

13        2.  Liberty Interest Created by State Law

14        In addition to the Constitution itself, a liberty interest may arise out of state law.

15   *Meachum*, 427 U.S. at 225-26.  A state may create a liberty interest through statutes,

16   prison regulations, and policies.  *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir.

17   2013).  Magistrate Judge Theiler found that Mr. Simon "fail[ed] to set forth any basis for

18   the contention that Washington law creates a liberty interest associated with sex offender

19   treatment" (R&R at 7), but did not consider whether RCW 72.09.335 (2004) created such

20   a liberty interest.  The court finds that Mr. Simon has no liberty interest in sex offender

21   treatment arising from this or any other statute, as explained below.

22

1    For many years, courts evaluated prisoners' state-created liberty interests

2  according to the "mandatory language" test articulated in *Greenholtz* and *Hewitt v.*

3  *Helms*, 459 U.S. 460 (1983).  Under this test, courts asked whether state law contained

4  "explicitly mandatory language" and "specific directives to the decisionmaker that if the

5  [law's] substantive predicates are present, a particular outcome must follow." *Ky. Dep't*

6  *of Corr. v. Thompson*, 490 U.S. 454, 463 (1989) (citing *Hewitt*, 459 U.S. at 471-72).

7  However, the Supreme Court abandoned the mandatory language test as applied to

8  prisoners' liberty interests in conditions of confinement in *Sandin v. Conner*, 515 U.S.

9  472.  *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005) (concluding that *Sandin*

10  "abrogated" the *Hewitt* mandatory language test for "liberty interests in avoiding

11  particular conditions of confinement").  In *Sandin*, the Ninth Circuit—applying the

12  *Hewitt* "mandatory language" test—concluded that the plaintiff, an inmate in Hawaii

13  state prison, had a liberty interest arising from a state prison regulation.  515 U.S. at 475-

14  76.  The Supreme Court reversed, holding that this regulation did not give rise to a

15  protected liberty interest despite its mandatory language.  *Id.* at 477.

16    According to *Sandin*, the mandatory language test as applied to prison regulations

17  strayed from the real concerns underlying due process liberty.  *Id.* at 483.  The Court

18  criticized the test for emphasizing "the language of a particular [state law]" rather than

19  "the nature of the deprivation." *Austin*, 545 U.S. at 222 (citing *Sandin*, 515 U.S. at 481).

20  Applying the mandatory language test, courts inferred liberty interests from routine

21  prison regulations, which encouraged prisoners to comb regulations searching for

22  mandatory language in order to bring a claim.  *Sandin*, 515 U.S. at 481.  As a result, this

1  test discouraged states from codifying prison procedures and improperly involved federal

2  courts in the "day-to-day management of prisons." *Id.* at 482.  To address these prison

3  management concerns, the Court applied a new test, finding that prisoner liberty interests

4  are "generally limited to freedom from restraint which . . . imposes atypical and

5  significant hardship on the inmate in relation to the ordinary incidents of prison life."

6  *Sandin*, 515 U.S. at 484.

7          Courts apply this "atypical and significant hardship" test to liberty interests related

8  to conditions of confinement to prevent federal courts from micromanaging prisons.[1]

9  *Chappell*, 706 F.3d at 1063; *Austin*, 434 U.S. at 223.  Indeed, the Ninth Circuit has

10 expressly rejected the old mandatory language test in this context:

11         In applying *Sandin*, we have concluded that the discretionary/mandatory
           substantive predicates approach was "abandoned" or "overruled" in *Sandin*,
12         and our decisions have focused *only* on the "atypical and significant
           hardship" test, even in the face of relevant prison regulations.

13

14

15

16         [1] The Ninth Circuit still applies the mandatory language test articulated in *Greenholtz* to
       liberty interests in parole and release to community custody, limiting *Sandin* to "internal prison
17     regulations." *Carver*, 558 F.3d at 873 n.5 (quoting *McQuillion v. Duncan*, 306 F.3d 895, 902-03
       (9th Cir. 2002); *see also Chappell*, 706 F.3d at 1064 n.5 (recognizing different tests for state-
18     created liberty interests in "prison conditions and discipline cases" and "parole"); *Swathout v.
       Cooke*, 131 S. Ct. 859, 861-63 (2011) (per curiam) (recognizing the "reasonable application" of
19     the *Greenholtz* mandatory language test when analyzing state-created liberty interests in parole).
       The Ninth Circuit also does not apply *Sandin* to pretrial detainees, noting that *Sandin* only
20     "refers to the ordinary incidents of imprisonment under a sentence after conviction." *Carlo v.
       City of Chino*, 105 F.3d 493, 498 n.1 (9th Cir. 1997) (quoting *Mitchell v. Dupnik*, 75 F.3d 517,
21     523 (9th Cir. 1996)).  This is consistent with *Sandin*'s rationale because statutes related to parole
       and pre-trial detainees are not intended to "guide correctional officials in the administration of a
22     prison." *Sandin*, 515 U.S. at 482.  These laws thus do not implicate the same prison management
       concerns as state laws related to convicted prisoners' conditions of confinement. *See id.* at 284;
       *Mitchell*, 75 F.3d at 523.

1   *Chappell*, 706 F.3d at 1064 (emphasis added).  Accordingly, the court finds that it is

2   appropriate to apply *Sandin* to determine if Mr. Simon has a liberty interest in receiving

3   sex offender treatment.  Mr. Simon is a convicted prisoner, receiving sex offender

4   treatment is an ordinary incident of his imprisonment, and terminating his treatment

5   affected the conditions of his confinement rather than the fact or length of his

6   imprisonment.  *See Leamer v. Fauver*, 288 F.3d 532 (3d Cir. 2002) (classifying an

7   inmate's challenge to his expulsion from sex offender treatment as a challenge to the

8   conditions of his confinement rather than to the fact or length of his detention).  The court

9   therefore applies the *Sandin* "significant hardship" test rather than the mandatory

10  language test when evaluating whether Mr. Simon has a liberty interest in receiving sex

11  offender treatment arising from Washington law.[2]  This is consistent with the practice of

12  courts in other jurisdictions.  *See, e.g.*, *id.* (applying *Sandin* and holding that New

13  Jersey's statutory scheme predicating the term of a prisoner's sentence on the prisoner's

14  response to treatment created a liberty interest in treatment); *Beebe v. Heil*, 333 F. Supp.

15  2d 1011 (10th Cir. 2004) (unpublished) (applying *Sandin* and holding that Colorado's

16  statutory scheme creates a due process liberty interest in sex offender treatment because,

17  under that scheme, sex offenders must undergo treatment as "an absolute prerequisite for

---

18

19      [2] This case concerns a liberty interest arising from a Washington statute, while the Court
        in *Sandin* arguably limited its holding to "internal prison regulations."  *See, e.g.*, *McQuillion*, 306
20      F.3d at 902.  However, the Ninth Circuit has previously applied *Sandin* to evaluate liberty
        interests created by state statutes.  *See Chaney v. Stewart*, 156 F.3d 921, 925 (9th Cir. 1998) ("A
        'negative implication from mandatory language' in a statute does not necessarily create a
21      protected liberty interest." (quoting *Sandin*, 515 U.S. at 483-84)).  The court applies *Sandin* in
        this case because that is the test used to evaluate liberty interests in conditions of confinement,
22      whether created by state statute or by regulation.  *See Chaney*, 156 F.3d at 925; *Leamer*, 288
        F.3d at 545.

ORDER- 11

1   release on parole"); *Reilly v. Iowa Dist. Court*, 783 N.W.2d 490 (Iowa 2010) (applying

2   *Sandin* and holding that Iowa's statutory scheme creates a due process liberty interest in

3   sex offender treatment because removal from sex offender treatment "inevitably affected

4   the duration of [the plaintiff's] sentence").

5         Under *Sandin*, a state-created liberty interest exists where the hardship imposed on

6   a prisoner is "atypical and significant . . . in relation to the ordinary incidents of prison

7   life." 515 U.S. at 484. Lawful incarceration necessarily limits a prisoner's rights and

8   privileges, *see Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977),

9   making it difficult to identify the baseline from which to measure an atypical and

10   significant hardship. *Austin*, 545 U.S. at 223. With this in mind, courts look at whether

11   the challenged state action (1) "present[s] a dramatic departure from the basic conditions"

12   of the prisoner's sentence, *Sandin* 525 U.S. at 485, or (2) "will inevitably affect the

13   duration of [the prisoner's] sentence." *Id.* at 487.

14         Terminating Mr. Simon's sex offender treatment did not dramatically depart from

15   the basic conditions of his sentence. Under Washington law, prison officials have

16   discretion to control the conditions of an inmate's confinement, and specifically to reduce

17   prisoners' privileges. For example, officials may change an inmate's custody

18   classification, decreasing the inmate's privileges, without triggering due process. *See In*

19   *re Dowell*, 674 P.2d 666, 668 (Wash. 1984) (holding that plaintiff inmate did not have a

20   due process liberty interest created by RCW 72.09.130 or WAC 275-88-105(2) in

21   maintaining a favorable custody classification, which would entitle him to programs and

22   privileges). Prison officials may also revoke visitation privileges with extended family

1    without due process procedures.  *In re Dyer* (*Dyer I*), 20 P.3d 907, 911-12 (Wash. 2001)

2    (holding that participation in the DOC's extended family visits program was not a liberty

3    interest created by RCW 72.09.470).  The fact that a prisoner has access to certain

4    favorable conditions of confinement "is not sufficient to create a liberty interest in the

5    continuation of those conditions."  *In re Gentry*, 245 P.3d 766, 768 (Wash. 2010)

6    (holding that Washington law does not create a protected liberty interest in general prison

7    population housing because solitary confinement is not an "atypical and significant

8    deprivation" for death row inmates).  The DOC had broad discretion to revoke Mr.

9    Simon's privileges and alter the conditions of his confinement.  Revoking this particular

10   privilege—access to sex offender treatment—was thus not a dramatic departure from the

11   basic conditions of Mr. Simon's sentence.

12          Terminating Mr. Simon's sex offender treatment also did not inevitably affect the

13   length of his sentence.  It is true that several courts have found state-created liberty

14   interests in sex offender treatment based on the relationship between treatment and the

15   length of the offender's sentence.  *See, e.g.*, *Leamer*, 288 F.3d at 544 (holding that New

16   Jersey's statutory scheme predicating the term of a prisoner's sentence on the prisoner's

17   response to treatment created a liberty interest in treatment); *Beebe v. Heil*, 333 F. Supp.

18   2d 1011 (10th Cir. 2004) (unpublished) (holding that Colorado's statutory scheme

19   establishing sex offender treatment as "an absolute prerequisite for release on parole"

20   created a due process liberty interest in treatment); *Reilly v. Iowa Dist. Court*, 783

21   N.W.2d 490 (Iowa 2010) (holding that Iowa's statutory scheme creates a due process

22   liberty interest in sex offender treatment because removal from treatment "inevitably

ORDER- 13

1    affected the duration of [the plaintiff's] sentence").  These cases, however, are

2    distinguishable because in these cases state statutes predicated the plaintiff's sentence on

3    sex offender treatment.

4          For example, the Third Circuit Court of Appeals in *Leamer* determined that New

5    Jersey's former statutory scheme created a due process liberty interest in sex offender

6    treatment.  288 F.3d at 544.  Under that scheme, treatment and confinement were

7    inextricably linked.  *Id.*  The sentencing court classified the plaintiff as having a "mental

8    aberration" in need of "specialized treatment."  *Id.*  This classification automatically

9    subjected the plaintiff to the maximum incarceration permitted by law unless he was

10   "cured."  *Id.*  Only a successful response to therapy could shorten the plaintiff's

11   incarceration, making therapy an integral element of the plaintiff's sentence.  *Id.*  Because

12   New Jersey's statutory scheme "predicate[d] the term of his sentence on his response to

13   treatment," deprivation of treatment imposed an "atypical and significant hardship" on

14   the plaintiff.  *Id.* at 544-45.  Courts analyzing *Leamer* conclude that any liberty interest

15   created by a similar statutory scheme "would be quite narrow, limited to the right to

16   pursue such treatment if it is indeed required for parole."  *Perry v. Pa. Dep't of Corr.*,

17   441 F. App'x. 833, 837 n.5 (3d Cir. 2011) (unpublished).

18         Other courts finding a liberty interest in sex offender treatment also base this

19   conclusion on the connection between treatment and the length of confinement.  For

20   example, the district court in *Beebe* found that Colorado's statutory scheme created a

21   liberty interest in sex offender treatment because, like in *Leamer*, only successful therapy

22   could shorten the plaintiff's incarceration.  *Beebe*, 333 F. Supp. 2d at 1016.  Without

1    treatment, the plaintiff could never be eligible for parole.  *Id.* at 1017.  Although a

2    prisoner had no liberty interest in parole under Colorado law, *id.* at 1013, the district

3    court found that ineligibility for parole constituted a "grievous loss," creating a liberty

4    interest in sex offender treatment.  *Id.* at 1017.  Similarly, the Iowa Supreme Court in

5    *Reilly* found a liberty interest in sex offender treatment because denial of treatment made

6    the plaintiff ineligible to accrue earned time and thus "inevitably affected the duration of

7    [his] sentence."  783 N.W.2d at 495.

8              By contrast, Washington law does not predicate the term of Mr. Simon's sentence

9    on his response to treatment.  Washington follows a complicated procedure for

10   determining whether to release a sex offender or transfer a sex offender to community

11   custody.  Before the expiration of a sex offender's minimum term, the DOC conducts an

12   end of sentence review.  RCW 72.09.340; RCW 9.95.420.  As part of this review, the

13   DOC examines the offender using recognized methodologies for the "prediction of sexual

14   dangerousness" and issues a "prediction of the probability that the offender will engage

15   in sex offenses if released."  RCW 9.95.420(1)(a).  The Indeterminate Sentence Review

16   Board ("ISRB") then conducts a hearing to determine "whether it is more likely than not

17   that the offender will engage in sex offenses if released on conditions to be set by the

18   board."  RCW 9.95.420(3).  The ISRB must release the offender unless it "determines by

19   a preponderance of the evidence that, despite such conditions, it is more likely than not

20   that the offender will commit sex offenses if released."  *Id.*

21             Throughout this process, the ISRB maintains broad discretion over early release or

22   transfer to community custody, with public safety as its paramount concern.  *In re Dyer*

ORDER- 15

1  (*Dyer II*), 283 P.3d 1103, 1108 (Wash. 2012).  The ISRB must "give public safety

2  considerations the highest priority when making all discretionary decisions."  RCW

3  9.95.009(3).  For this reason, the ISRB may consider a sex offender's lack of treatment

4  when making decisions about release.  *Dyer II*, 283 P.3d at 1109.  However, unlike the

5  statutory schemes in *Leamer*, *Beebe*, and *Reilly*, the ISRB retains discretion over how

6  much weight to give this consideration, and a prisoner's sentence is not inevitably

7  lengthened by failure to complete sex offender treatment.  *See, e.g.*, *Dyer II* at 1106

8  (finding that the ISRB refused to transfer plaintiff to community custody based on his

9  lack of sex offender treatment, as well as other factors such as his behavioral history, in-

10  person statement, and psychological evaluations); *In re Mattson*, 214 P.3d 141, 147

11  (Wash. 2009).  Washington law does not automatically prohibit untreated sex offenders

12  from being transferred to community custody, and thus lack of treatment does not impose

13  an atypical and significant hardship relative to the ordinary incidents of prison life.

14        In order to proceed with his due process claims, Mr. Simon must have a protected

15  liberty interest at stake.  *Ingraham*, 430 U.S. at 672.  The court agrees with Magistrate

16  Judge Theiler that Mr. Simon has no liberty interest in this case, whether arising from the

17  Constitution or state law.  The court therefore DISMISSES Mr. Simon's procedural and

18  substantive due process claims.

19  **C.     Equal Protection**

20        The Defendants also move to dismiss Mr. Simon's equal protection claim.  Having

21  carefully reviewed Magistrate Judge Theiler's Report and Recommendation (R&R (Dkt.

22  # 33)), Mr. Simon's objections thereto (Objections (Dkt. # 34)), and the governing law,

1  the court ADOPTS the Report and Recommendation (Dkt. # 35) and DENIES

2  Defendant's motion to dismiss Mr. Simon's equal protection claims.

3         A district court has jurisdiction to review a Magistrate Judge's report and

4  recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must

5  determine de novo any part of the magistrate judge's disposition that has been properly

6  objected to."  *Id.*  "A judge of the court may accept, reject, or modify, in whole or in part,

7  the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

8  The court reviews de novo those portions of the report and recommendation to which

9  specific written objection is made.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

10 (9th Cir. 2003) (en banc).  Because Mr. Simon is proceeding *pro se*, this court must

11 interpret his complaint and objections liberally.  *See Bernhardt v. Los Angeles Cnty.*, 339

12 F.3d 920, 925 (9th Cir. 2003).

13        The court ADOPTS this portion of Magistrate Judge Theiler's Report and

14 Recommendation and adopts the reasoning as if set forth herein.  The court has

15 thoroughly examined the record before it and finds the Magistrate Judge's reasoning

16 persuasive in light of that record.  Defendants essentially reargue the arguments they

17 made to Magistrate Judge Theiler, and the court independently rejects them for the same

18 reasons as Judge Theiler.

19 //

20 //

21 //

22

ORDER- 17

1

## IV.   CONCLUSION

2        For all of the reasons stated above, the court GRANTS in part and DENIES in part

3   Defendants' motion to dismiss.  The court DISMISSES Mr. Simon's procedural and

4   substantive due process claims because Mr. Simon has no liberty interest implicated by

5   his expulsion from sex offender treatment, whether arising from the U.S. Constitution

6   directly or from Washington law.  However, with respect to Mr. Simon's equal protection

7   claim, the court ADOPTS Magistrate Judge Theiler's Report and Recommendation and

8   DENIES Defendants' motion to dismiss.

9        Dated this 16th day of May, 2013.

10

11

12   _____

13   JAMES L. ROBART
     United States District Judge

14

15

16

17

18

19

20

21

22

ORDER- 18