UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DERRICK M. SIMON,            )
                             )   CASE NO. C12-0979-JLR-MAT
    Plaintiff,               )
                             )
    v.                       )
                             )   REPORT AND RECOMMENDATION
ROBIN MURPHY, et al.,        )
                             )
    Defendants.              )
_____ )

INTRODUCTION

Plaintiff Derrick M. Simon proceeds *pro se* and *in forma pauperis* in this civil rights matter pursuant to 42 U.S.C. § 1983. He names as defendants Robin Murphy and Sally Neiland, both of whom, at the time of the events at issue in this case, served as Correctional Mental Health Unit Supervisors for the Washington State Department of Corrections (DOC) at the Twin Rivers Unit of Monroe Correctional Complex (MCC/TRU or TRU). The Court previously dismissed plaintiff's claim that his expulsion from the DOC's Sex Offender Treatment Program (SOTP) violated his Fourteenth Amendment rights to procedural and

substantive due process, and left open his equal protection claim. (Dkt. 40.)

Now before the Court is Defendants' Motion for Summary Judgment regarding plaintiff's remaining claim (Dkt. 56), and Plaintiff's Cross Motion for Summary Judgment or Request for Leave to Amend (Dkt. 59). Having considered all documents filed in support and opposition to the motion, along with the remainder of the record, the Court concludes defendants' motion should be GRANTED, plaintiff's cross motion should be DENIED, and plaintiff's equal protection claim and this matter should be DISMISSED.

## BACKGROUND

The DOC offers sexual deviancy treatment to offenders through the SOTP. (*See* Dkt. 56, Ex. 1, Attach. B (DOC Policy 570.000)). SOTP provides treatment to "as many as 200 medium security offenders" at two facilities – the TRU and Airway Heights Corrections Center. (*Id.*) To enter into SOTP, an offender must sign a document acknowledging the rules of the program. (*Id.* at 7.) An offender "may be terminated" from SOTP for, *inter alia*, fighting or assaultive behavior, behaviors disruptive to the orderly operation of the program or the secure and orderly operation of the facility, or a lack of progress in treatment as determined by clinical staff. (*Id.* at 7-8.)

Plaintiff was convicted and sentenced in 2004 on counts of Indecent Liberties and Promoting Prostitution in the First Degree. (Dkt. 67, Ex. 1, Attach A.)[1] He first entered SOTP in 2007 and was terminated from the program following a hearing in 2008. (Dkt. 56, Ex. 1, ¶4 (Murphy attests that "a separatee was placed on Simon that no longer allowed him to remain at TRU[,]" as it did not allow him "to reside in the same institution as another offender or

---

[1] Defendants attest that plaintiff was released from prison on November 17, 2013.

REPORT AND RECOMMENDATION
PAGE -2

offenders."); *see also id.*, Ex. 1, Attach. A (letters regarding 2008 termination).)

In December 2009 or early January 2010, plaintiff was allowed to re-enter SOTP. (*Id.*, Ex. 1, ¶4 and Ex. 2, ¶5.) Prior to his re-entry, in August 2009, plaintiff signed an Informed Consent for SOTP Treatment reflecting his agreement to follow the rules of treatment and acknowledging that failure to follow the rules may result in disciplinary action, that certain infractions may result in a transfer from TRU for custody reasons, and that such a transfer may result in termination from treatment. (*Id.*, Ex. 2, Attach. A.)

Plaintiff was again terminated from SOTP shortly after his re-entry into the program. An SOTP Termination form reflects that, on the third day of treatment, plaintiff was "removed from group" following "disruptive behavior and lack of accountability for his actions." (Dkt. 67, Ex. 1, Attach. B.) Following a hearing, plaintiff was "found to be in possession of an extensive business plan involving 'hooking up' men with young women from outside the U.S., 1,000 images of females, some minors and 6 photos he ordered that were pornographic." (*Id.*) Both Murphy and Neiland, along with one other individual, signed off on the termination form on January 28, 2010. (*Id.*)

Notations in OMNI, a DOT database, reflect that plaintiff had been placed on administrative segregation following his report of an assault by his cell partner on January 25, 2010, and, on the following day, "[h]undreds of commercial photos of young women, some possibly underage, were retrieved in a cell search," as well as "a well developed Business Plan to market women for 'dating' incarcerated men[,]" which was "seen as significant[]" given plaintiff's history of "violence against women and attraction to minor females[.]" (*Id.*, Attach. C.) (*See also id.*, Ex. 2 (Declaration of Ron Taggart-Deffinbaugh, a former Custodial Unit

REPORT AND RECOMMENDATION
PAGE -3

Supervisor at TRU, addressing his OMNI entries regarding plaintiff's 2010 SOTP termination).) An additional notation shows plaintiff's SOTP termination was upheld by "Team Leaders and Director of SOTP[,]" and states: "Termination is based on disruptive behavior in group, deception with treatment staff, use and extent of sexually explicit materials some of which depicted very young looking girls that appeared to be adolescent/young teenagers. Additionally trafficking of these materials on treatment unit and aggressive behaviors towards offenders on A unit." (*Id*., Ex. 1, Attach. C.) (*See also id*., Ex. 2.)

The OMNI report also reflects that, in February 2010, plaintiff was demoted to medium custody and approved for transfer following a review by Hearings Specialist S. Collins and approval by Associate Superintendent H. Anderson. (*Id*., Ex. 1, Attach. C.) Murphy and Neiland attest they had no involvement in the determination of plaintiff's custody level. (Dkt. 56, Ex. 1, ¶7 and Ex. 2, ¶7.) They further attest that, given the change in custody status, plaintiff could no longer remain at TRU, which is a minimum custody facility. (*Id*.)

An Administrative Segregation Review form submitted by plaintiff is consistent with the OMNI narrative. The forms states that, following plaintiff's placement in administrative segregation, a search of his property revealed "hundreds of sexual posed photos of young women as well as an extensive business plan with the apparent purpose of matching offenders with women overseas." (Dkt. 59, Appx. D at 2.) The form further states: "SOTP supervisors determined these were overriding indicators that Simon was still not sufficiently motivated to work on his sexual deviancy issues and further that his continued presence at TRU would likely have a negative impact on other participants." (*Id*.) S. Collins, on February 2, 2010, concurred with the recommendation and signed off on the form. (*Id*.)

## DISCUSSION

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

Plaintiff here alleges a violation of his right to equal protection. Specifically, he maintains his termination from SOTP occurred as a result of discrimination based on his race, which he identifies as "Black." (Dkt. 59 at 3.)[2]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of*

---

2 The Court considers herein only the allegation of an equal protection violation as related to plaintiff's 2010 termination from SOTP and as set forth in plaintiff's First Amended Complaint. (*See* Dkt. 23.) The Court previously struck a proposed Second Amended Complaint adding allegations regarding plaintiff's 2007/2008 SOTP termination given plaintiff's failure to comply with LCR 15. (Dkt. 64.) The Court further noted that, even if properly filed, a motion to amend would have been denied based on undue delay, given the submission well after the discovery and dispositive motion deadlines, and based on futility, given the applicable statute of limitations. (*Id*.) That is, because plaintiff initiated this case in June 2012 (*see* Dkt. 1), any claims regarding incidents occurring in 2007 or 2008 would be barred by the applicable three-year statute of limitations. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). For these same reasons, plaintiff's alternative requests for leave to amend and to extend discovery (*see* Dkt. 59 at 2, 19) should be DENIED.

REPORT AND RECOMMENDATION
PAGE -6

01 *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Prisoners are protected under
02 the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based
03 on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1987); *accord Serrano v. Francis*, 345 F.3d
04 1071, 1081-82 (9th Cir. 2003). In order to establish an equal protection violation, "a plaintiff
05 must show that the defendants acted with an intent or purpose to discriminate against the
06 plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193,
07 1194-95 (9th Cir. 1998) (citations omitted). Therefore, to avoid dismissal on summary
08 judgment, plaintiff "'must produce evidence sufficient to permit a reasonable trier of fact to
09 find by a preponderance of the evidence that the decision was racially motivated.'" *Serrano*,
10 345 F.3d at 1082 (quoting *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 732 (9th Cir.
11 2003) (citations and alterations omitted).

12 Plaintiff avers defendants held him to different standards by allowing white inmates,
13 including Anthony Leno and Bill Bryant, to possess photographs of adult women, and to
14 engage in fights or other serious incidents without being terminated from SOTP for being
15 disruptive. (Dkt. 23 at 3; *see also* Dkt. 59 at 9.) He notes he was placed on administrative
16 segregation after an assault by his white cellmate, Charles Lowe, while Lowe was not infracted
17 and allowed to finish SOTP. (Dkt. 59 at 6-7.) He argues inmates "regularly exchanged
18 catalogues, pictures, and magazines of women models[,]" that this behavior "was encouraged
19 and approved of by the therapists [a]s long as the women were not nude[,]" and maintains the
20 photographs in his possession were all from magazines, "that none of the women in the pictures
21 are nude, and all were adult women and did not appear to be underage." (*Id*. at 9, 16.)
22 Plaintiff further asserts Murphy conducted the search of his cell acting on information from

REPORT AND RECOMMENDATION
PAGE -7

Lowe and that "other inmates who are white were in possession of the exact same pictures" found in his cell, but were allowed to remain in SOTP, that both Murphy and Neiland "were aware of this[,]" and that he intends "to present witnesses from the SOTP as to this fact." (*Id*. at 9-10, 16.)

Defendants contend plaintiff was terminated from SOTP because he violated numerous conditions of confinement, including: (1) his possession of hundreds of photographs of naked and partially clad women, as well as females appearing to be teens and adolescents, in violation of SOTP treatment rules; (2) the development of an extensive business plan to "hook up" men with young women from outside the United States, which was perceived by staff as contrary to his commitment to decrease his usury attitude towards women and his commitment to the SOTP process; and (3) the fact that, by the third day of treatment, he became disruptive during a group session and refused to be held accountable for his actions. (Dkt. 56, Exs. 1 & 2 and Dkt. 67, Exs. 1 & 2.) Defendants note that, upon being infracted and found guilty of the possession of the above-described photographs, plaintiff lost his medium custody status, which kept him from remaining at TRU. (*Id*.)

Defendants deny plaintiff was terminated from SOTP or subjected to any differential treatment based on his race. They deny plaintiff was similarly situated to any of the white inmates named because plaintiff was not terminated for fighting (*see*, *e.g.*, Dkt. 32 at 24), and add that termination from SOTP for fighting is discretionary (Dkt. 56, Ex. 1, Attach B at 7 (offenders "may be terminated" for fighting)). Defendants also submit that offenders are subject to infractions and discipline for possession of sexually explicit materials, that all pornography is prohibited, and that SOTP participants may be subject to more narrow

REPORT AND RECOMMENDATION
PAGE -8

restrictions on what they may possess as determined by crime and treatment needs. (Dkt. 67, Ex. 2, ¶¶6-7 (also stating that DOC rules prohibit offenders from giving, selling, borrowing, lending, or trading anything of value to each other).)

Finally, defendants point to statistics as countering plaintiff's claim. They observe that there were 161 inmates enrolled in SOTP in 2010, thirteen of whom were African American, and that there were sixteen terminations in that year, including two African Americans, one Pacific Islander, one Native American, and twelve Caucasians. (Dkt. 56, Ex. 2, ¶8.)

The Court finds defendants entitled to summary judgment. Defendants provide evidence supporting their contention that plaintiff was terminated from SOTP because of his disruptive behavior, possession of images found in violation of treatment rules, and his creation of a business plan construed as exploitative, similar to a crime for which he was convicted, and contrary to his commitment to the SOTP process. They identify SOTP policy supporting termination (*see* Dkt. 56, Ex. 1, Attach. B at 7-8), and explain that the change in plaintiff's custody status, as made by an individual not named as a defendant in this matter, necessitated plaintiff's transfer from the facility.

Plaintiff fails to identify any evidence of intentional discrimination or differential treatment based on race. His reliance on the fact that certain white inmates were not terminated from SOTP due to fighting fails given that plaintiff's disruptive conduct during treatment served as only one of several reasons for his termination. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-68 (9th Cir. 2005) (different treatment of unlike individuals does not support an equal protection claim); *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993) (concluding equal protection rights were not violated where petitioner

failed to show she was being treated differently from "similarly situated" prisoners).

Plaintiff also fails to identify any support for his assertion that inmates were allowed to possess pornographic materials and that other, white inmates were allowed to possess the very same images that played a role in his termination from the program. His contentions to this effect are no more than conclusory and, therefore, insufficient to defeat summary judgment. *Hernandez*, 343 F.3d at 1112.

Nor does plaintiff in any respect address the fact that he was also terminated from the program based on the discovery of his "well developed Business Plan to market women for 'dating' incarcerated men[,]" which was "seen as significant[]" given plaintiff's history of "violence against women and attraction to minor females[.]" (Dkt. 67, Ex. 1, Attach. C; *accord id.*, Ex. 2, ¶4.) He, at most, references "a business plan for a pen-pal service." (Dkt. 59 at 9.) Defendants, in contrast, submit a "Letter of Apology!" directed to Neiland from plaintiff and marked received in June 2010. (*Id.*, Ex. 1, Attach. D.) The letter reflects plaintiff's acknowledgement of the "business plan" considered in relation to his termination:

> . . . I now know that my business plan was [a part] of my distorted thoughts that I was thinking of a legal way to exploit women but [Sally] please ask yourself this was that the actual reason I was terminated or was it really because you were hearing my named involved in [too] much drama?

(*Id.*) The letter also reflects plaintiff's admission that he was found to possess pornographic pictures. (*Id.* ("I did have pornographic pictures of women Sally used for masturbation and I did not know you would not [approve] it but to improve myself Sally I've gotten rid of all my pictures[.]"))

Plaintiff, in sum, lacks any evidence of discriminatory intent or evidence supporting the

conclusion that he was treated differently than similarly situated white inmates. Neither his mere assertion of bias, nor the fact of his race suffices to defeat the motion for summary judgment. *See Thornton*, 425 F.3d at 1167 ("[C]onclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment[.] So, too, the fact that Mrs. Thornton is Native American and certain City councilmembers and administrators are not, standing alone, does not mean that Defendants have discriminated on the basis of race.") (internal citation omitted). Plaintiff's equal protection claim should, therefore, be dismissed.[3]

## CONCLUSION

As stated above, the Court finds an absence of evidence supporting plaintiff's claim of an equal protection violation and defendants entitled to summary judgment. Accordingly, defendants' Motion for Summary Judgment (Dkt. 56) should be GRANTED, Plaintiff's Cross Motion for Summary Judgment or Request for Leave to Amend (Dkt. 59) should be DENIED, and this matter should be DISMISSED.

DATED this 30th day of January, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge

---

[3] Given the above conclusion, the Court declines to address defendants' alternative argument as to their entitlement to qualified immunity.